[No. 14321.  Department Two.  January 9, 1918.]

WILLIAM McDONALD, *Appellant*, v. M. A. WARD,
                    *Respondent*.[1]

COVENANTS—WARRANTY—KNOWLEDGE OF DEFECTS—RAILROAD RIGHT
OF WAY.  The grantee may sue on his covenants of warranty when
ousted by a railroad company from its 200 foot right of way defined
by public statute, although he had knowledge of the existence of the
right of way and the railroad's use and occupation at the time he
took his deed; since a railroad right of way is not excepted from
the covenants by reason of its public and notorious character.

LIMITATION OF ACTIONS—ACCRUAL—BREACH OF COVENANT.  Where
a railroad right of way by public grant was only a limited fee, with
implied condition of reverter to the government, it was not subject
to adverse use or occupation; and hence limitations against an action
for breach of covenants of warranty by reason of the existence of
the right of way do not begin to run until the covenants are broken
by eviction, notwithstanding adverse use for a period beyond the
statute of limitations.

SAME.  In an action for breach of covenants of warranty by the
existence of a railroad right of way, the land occupied by a line of
telegraph poles, 40 feet from the center of the track, and all the
land lying between it and the main track, was land occupied by the
railroad company, to the knowledge of the grantee at the time he
took his deed, and such possession by the company amounted to a
constructive eviction so that the statute of limitations commenced to
run from that time.

Appeal from a judgment of the superior court for King
county, Jurey, J., entered February 3, 1917, upon granting
a nonsuit, in an action for breach of covenants of warranty.
Reversed.

*J. H. Gordon*, for appellant.

*Roberts, Wilson & Skeel* and *J. L. Runner*, for respondent.

CHADWICK, J.—On May 4, 1903, respondent conveyed to
appellant a certain legal subdivision of land in Benton
county, Washington.  The main line of the Northern Pacific
Railway was constructed across the land at the time of the

[1]Reported in 169 Pac. 851.

conveyance. The deed contains full covenants of warranty without exception or reservation. Respondent had been in possession of the land and had cultivated approximately all of it other than that actually occupied by the railway. Appellant entered into possession, and he, too, cultivated all of the land except that which is actually occupied by the road-bed, its banks and borrow pits. Appellant fixes the width of this strip in his pleadings as from sixteen to twenty feet. Appellant remained in possession and cultivated the land for a period of twelve or thirteen years, when he was ousted by the Northern Pacific Railway Company under its superior title to a strip of land two hundred feet in width on either side of its main line. See *Northern Pac. R. Co. v. McDonald*, 91 Wash. 113, 157 Pac. 222.

Appellant then began this action upon the covenants of his deed. At the close of plaintiff's case, the court granted a motion for judgment on account of the insufficiency of the evidence. We are not apprised as to the particular ground, but presume from the tenor of the briefs that it was the opinion of the trial judge that appellants could not recover for the loss of land included in the right of way of the railroad the bounds of which were defined by public statute (Act of July 2, 1864; 13 Stat. at Large 367), and which was occupied in part at the time the conveyance was made, and for the further reason that the statute of limitations had run.

It is the contention of the respondent that the right of way of a railroad company is no more than an easement, of such a public and notorious character that a party having knowledge of the existence of the roadbed and the operation of trains will be held to have contracted with reference to it and to its limits and bounds.

We held in *Hoyt v. Rothe*, 95 Wash. 369, 163 Pac. 925, that a public highway is impliedly exempted from covenants of seizin and warranty and against incumbrances. Although there is a division of authority upon this question, our holding is in line with the great weight of authority. Whether a

railroad, built and in operation across a piece of land at the time it is conveyed, is notice to the grantee of the nature and extent of the right of way under which it is operated, thus impliedly binding him and preventing a recovery upon the covenants of a deed of general warranty, is the main question calling for discussion and decision.

The weight of authority is that a right of way of a railroad does not fall within the exception worked by the courts as to existing highways; that a grantee may maintain an action upon his covenants, although he had knowledge of the existence of the right of way at the time he took his deed. *Beach v. Miller*, 51 Ill. 206; *Wadhams v. Swan*, 109 Ill. 46; *Burk v. Hill,* 48 Ind. 52, 17 Am. Rep. 731; *Douglass v. Thomas*, 103 Ind. 187, 2 N. E. 562; *Quick v. Taylor*, 113 Ind. 540, 16 N. E. 588; *Barlow v. McKinley*, 24 Iowa 69; *Flynn v. White Breast Coal & Min. Co.*, 72 Iowa 738, 32 N. W. 471; *Pilcher v. Atchison, T. & S. F. R. Co.*, 38 Kan. 516, 16 Pac. 945, 5 Am. St. 770; *Kellogg v. Malin*, 50 Mo. 496, 11 Am. Rep. 426; *Williamson v. Hall*, 62 Mo. 405; *Whiteside v. Magruder*, 75 Mo. App. 364; *Huyck v. Andrews*, 113 N. Y. 81, 20 N. E. 581, 10 Am. St. 432, 3 L. R. A. 789; *Farrington v. Fourtelott*, 39 Fed. 738.

A lesser number of the courts have held to the contrary. *Van Ness v. Royal Phosphate Co.*, 60 Fla. 284, 53 South. 381, Ann. Cas. 1912C 647, 30 L. R. A. (N. S.) 833; *Ex parte Alexander*, 122 N. C. 727, 30 S. E. 336; *Goodman v. Heilig*, 157 N. C. 6, 72 S. E. 866, 36 L. R. A. (N. S.) 1004; *Smith v. Hughes*, 50 Wis. 620, 7 N. W. 653.

We shall not go into the reasoning of the courts, but content ourselves with holding to the weight of authority. This brings us to the question whether the action is barred by the statute of limitations. The solution of this problem compels an inquiry into the nature and extent of the covenant. If time is taken to look into the cases we have cited, it will be noticed that, in almost all of them, the right of way of a railway company is treated as an easement, and the courts

discuss the question of the right to recover as a covenant against incumbrances, and this, too, whether the right of way has been acquired under eminent domain or by a deed of general warranty. A covenant against incumbrances operates upon existing things and would be broken at the time it is made. It gives an immediate right of action and starts the statute running. But we think the facts take the case out of that rule. The theory upon which the cases proceed is that, notwithstanding the character of the title, whether taken under the sovereign power of the state or by deed, there is a reversion to private ownership in case the railway company should cease to use it for railway purposes.

But here the property occupied by the railway company and to which it is entitled under the Federal grant was never the subject of private ownership. It was not taken by the railway company in the exercise of its public functions through the instrumentality of the sovereign power of the state, but was made the subject of an independent grant. In other words, the effect of the act of July 2, 1864, granting a right of way to the Northern Pacific Railway Company, reserved in the government for the use of the Northern Pacific Railway Company a strip of land across the public domain to be defined by a filing of a map of definite location. In *Northern Pac. R. Co. v. Townsend*, 190 U. S. 267, the extent of the grant was a subject of inquiry. The court said:

"Manifestly, the land forming the right of way was not granted with the intent that it might be absolutely disposed of at the volition of the company. On the contrary, the grant was explicitly stated to be for a designated purpose, one which negatived the existence of the power to voluntarily alienate the right of way or any portion thereof. The substantial consideration inducing the grant was the perpetual use of the land for the legitimate purposes of the railroad, just as though the land had been conveyed in terms to have and to hold the same so long as it was used for the railroad right of way. In effect the grant was of a limited fee, made

on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted."

Subsequent decisions of the supreme court in *Northern Pac. R. Co. v. Ely*, 197 U. S. 1, and *Northern Pac. R. Co. v. Concannon*, 239 U. S. 382, make it clear that the reversion is in the United States and that the right of way is not, in the absence of specific legislation, a subject of sale by the railway company, and that it cannot become a subject of private ownership by adverse use or occupation. From these later decisions it is clear that the court meant when it said in the *Townsend* case, "the grant was of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted," that the reversion is in the United States and not in the owner of any contiguous property.

Considering then the nature of the grant and the ultimate resting place of the title in the event that the company should cease to use or retain it for railway purposes, the conclusion is compelled that we have a case of failure of title, rather than a suit upon a covenant against incumbrances.

"The covenant of warranty is a covenant *in futuro*, runs with the land and is broken at the time of eviction." *West Coast Mfg. & Inv. Co. v. West Coast Imp. Co.*, 25 Wash. 627, 66 Pac. 97, 62 L. R. A. 763.

"The obligation in a general warranty of title is not that the covenantor is the true owner, or that he is seised in fee, with right to convey, but that he will defend and protect the covenantee against the rightful claims of all persons." 7 R. C. L. 1144, § 57.

Appellant having been evicted by the assertion of a superior title, respondent is bound on his covenant of warranty, and the action having been begun within the period of limitation after the eviction, he is entitled to recover.

Appellant admits that he is barred of a recovery for the loss of the land actually occupied by the railroad, upon the true theory that possession by the railroad company, at the

time the deed was executed and delivered, was a constructive
eviction. Appellant fixes the amount of land occupied by the
railroad company as from sixteen to twenty feet. His testi-
mony shows that, at the time he entered into possession of
the land, there was a line of telegraph poles about forty feet
from the center line of the railroad track. A telegraph line
is incident to the track of the railway company and is essen-
tial to the operation of the road. The land occupied by the
telegraph line, and all the land lying between it and the main
track, was land occupied by the railroad company, and ap-
pellant should be held, as a matter of law, to have been
evicted therefrom at the time he received his deed, notwith-
standing the fact that he cultivated some of the land lying
between the line of poles and the track for some years there-
after. Appellant's right of recovery, therefore, will be lim-
ited to damages for loss of the land occupied by the respond-
ent, less the amount of land occupied by the railway com-
pany and the telegraph line. The court will determine the
amount of this from the testimony in the case. Reversed and
remanded for further proceedings.

ELLIS, C. J., MOUNT, HOLCOMB, and MORRIS, JJ., concur.