[No. 18102. *En Banc.* March 6, 1924.]

## BANK OF ALASKA, *Respondent,* v. ROBERT ASHLAND et al., *Appellants.*[1]

COVENANTS (32, 33)—WARRANTY—BREACH—MEASURE OF DAMAGES. In an action upon breach of a covenant of warranty by reason of the existence of an alley, the plaintiff is entitled to recover the difference in the market value of the property subject to the right of way, and the market value had none existed; and also the reasonable cost and attorney fees in defending the title, and of an appeal, where the appeal was authorized.

SAME (26)—WARRANTY—BREACH—EVICTION—EVIDENCE—ADMISSIBILITY. In an action upon breach of a covenant of warranty, judgment in a former action is admissible to show that plaintiffs had been evicted, notwithstanding the grantors had not been tendered the defense and had no opportunity to defend the other action.

SAME (8-1) — WARRANTY — EASEMENT AS ENCUMBRANCE — PUBLIC ALLEYWAY. A covenant of warranty of seizin and against incumbrances in a deed of city property covers a public right of way or alley, the existence of which entitles the grantee to damages.

Appeal from an order of the superior court for King county, Smith, J., entered February 28, 1923, granting plaintiff a new trial, after the verdict of a jury awarding nominal damages for breach of covenant of warranty. Affirmed.

*F. E. Fuller (Peters & Powell,* of counsel), for appellants.

*Roberts & Skeel* and *Tyre H. Hollander,* for respondent.

MACKINTOSH, J.—The appellants, in 1918, by warranty deed, conveyed lot 8, block 7, of the town of Cordova, Alaska, according to the plat thereof, to the respondent. The lot as platted is 25 x 100 feet, and at the time of the deed there was a building on it cover-

[1]Reported in 224 Pac. 7.

ing 21 x 100 feet, the remaining four feet being used as an alleyway. After the respondent had gone into possession of the property, it attempted to close this alley, whereupon suit was begun against it in the district court of Alaska to enjoin the respondent's action, and that court determined that the alleyway was a public one and had been so dedicated. An appeal was taken to the circuit court of appeals for the ninth circuit and is found reported in *Slater v. Lathrop,* 272 Fed. 661, to which opinion reference is made for a more detailed statement of the facts, and that court affirmed the district court and held that the property had been dedicated and had been used by the public for more than ten years. That decision further permanently enjoined the respondent here from in any manner obstructing or closing the alley, or from in any way preventing its use as a public thoroughfare. After that decision, the respondent started this suit for damages sustained by it by reason of the eviction from the four feet, and for the cost of defending the case in the district and circuit court of appeals.

It is urged here that no damages were proved, and that, therefore, the respondent could take nothing by this action. There was some evidence, however, as to the difference in the market value of the property subject to the right of way and the market value had not the right of way existed, and this difference the respondent would be entitled to, as it would also be entitled to the reasonable costs and attorney's fee incurred by it in the defense of its title to the alleyway in the district court, and for the reasonable value of the costs and attorney's fee on appeal to the circuit court of appeals, if there was evidence before the jury showing that the appeal had been authorized by the appellants, and in the record we do find evidence to that effect.

Objection is next made that the decree in the case of *Slater v. Lathrop, supra,* was not admissible, for the reason that no notice had been given to the appellants of the action in the district court, nor had they been given an opportunity to conduct the defense of the cause. Even if the appellants had had no such notice or opportunity, the decree, nevertheless, was properly admissible in evidence, and if they had no such notice or opportunity, of course they would not be concluded as to all the matters litigated, but this would not prevent the decree being admissible as *prima facie* evidence of the fact that the respondent had been evicted. *Herbert v. Northern Trust Co.,* 269 Pa. St. 306, 112 Atl. 471; *Knepper v. Kurtz,* 58 Pa. St. 480; *Thomas v. Becker,* 190 Iowa 237, 180 N. W. 285; *Burchett v. Blackburne,* 198 Ky. 304, 248 S. W. 853; *Klumpp v. Howcott,* 139 La. 163, 71 South. 353.

The next question (and the one of real importance in the case) is this, whether, under a warranty deed, the grantee may maintain an action against the grantor for damages where there exists a roadway, street or alley on a portion of the granted premises.

This court, in *Hoyt v. Rothe,* 95 Wash. 369, 163 Pac. 925, recognized that on this question there was a diversity among the authorities, and in that case held that a public right of way does not fall within the covenant against encumbrances, but "is impliedly exempted from the effect of the covenant." Later, in the case of *McDonald v. Ward,* 99 Wash. 354, 169 Pac. 851, L. R. A. 1918F 662, the *Hoyt* case was referred to and the court, again recognizing the division of authority, held to the exemption of highways from covenants of "seizin and warranty and against encumbrances." Again, in *Walquist v. Johnson,* 103 Wash. 30, 173 Pac. 735, the court more strongly committed itself to this doctrine, saying:

"Nor can the recovery be supported upon the theory that there was a breach of warranty because a public highway extended over the land. We have adopted the rule, supported by a majority of the cases, that a public highway is not an incumbrance warranting a purchaser to claim a breach of a covenant of warranty, even though there may be no express exception of the highway from the covenant."

It will be noticed that these three cases were dealing with highways across rural land, but we take it that the principle announced is not affected by that fortuitous circumstance. The law stood in that situation until the case of *Fagan v. Walters,* 115 Wash. 454, 197 Pac. 635, which involved a highway over rural land, and there the court held that a covenant of warranty warrants against known as well as unknown defects and incumbrances, and that where an easement for a sixteen-foot right-of-way existed over the granted land, the grantee could recover damages for this breach of warranty. That opinion does not refer to the rule announced in the three cases hereinbefore cited and contains this language:

"It seems to be settled, however, that ordinarily, knowledge on the part of a grantee at the time of the existence of an incumbrance upon the land, or a defect in the grantor's title, does not militate against the covenants in the deed, as such covenants warrant against known as well as unknown defects and incumbrances, and a grantee with knowledge of an incumbrance may rely upon the covenants in the deed for his protection."

Although the opinion does not clearly indicate it, the record in the *Fagan* case shows that the right-of-way there under consideration was a private and not a public right-of-way. It is to be borne in mind that the right-of-way in the case before us is a public one which, by a decision of the circuit court of appeals,

was in existence at the time of the deed from the appellants to respondent, and that it is over town, or city, property.

The argument is advanced that the *Fagan* case, *supra,* in effect, overrules the three prior cases. But, bearing in mind that the *Fagan* case relates to a private right-of-way over rural property, and the other three cases relate to public rights-of-way over rural property, there is no necessary conflict between the decisions, and the rule as established by the four cases is, that public rights-of-way over rural property are impliedly exempted from covenants of "seizin and warranty and against encumbrances," but that private rights-of-way over rural property are not so exempted, and that the existence of such private rights-of-way gives rise to an action upon the covenants against the grantor.

It may be that there is not any very substantial difference to be noticed between public and private rights-of-way over rural property, but the decisions having been made and titles having been transferred in reliance upon them, the court is not disposed to alter the rule as laid down by the four prior decisions.

The decisions of this court have made the distinction between rural and city property, and strong contention is made that there is no reason for such a distinction. On the other hand, it is argued that rural and city property are very differently situated as affected by rights-of-way; that generally the purchaser of rural property buys an appreciable area from which the deduction of a right-of-way is not much of a loss, whereas the purchaser of urban property buys a very restricted area and to take from it a right-of-way is to materially decrease the amount called for in the deed, and that, in the present case, practically one-sixth of the area agreed to be transferred by the grantor has

been lost to the respondent, showing that a distinction should be made between the rule applicable to rural and urban properties.

Many authorities are cited upholding this argument, probably the most interesting one being the decision of the supreme court of Minnesota in *Sandum v. Johnson,* 122 Minn. 368, 142 N. W. 878, where, after a review of a multitude of cases, that court said:

"There is an obvious distinction between rural highways and city streets. Cities are platted into lots, blocks and streets. The streets are marked out upon the plat as entirely separate and distinct from the lots and blocks. It is rarely necessary to open streets other than those so marked out. To lay out a street over a lot would often result in appropriating the entire lot. It is also as much a matter of common knowledge that the purchaser of a city lot never contemplates that it will be burdened by an easement for a street, as it is a matter of common knowledge that the purchaser of a farm expects to take it subject to the easement for the existing country roads."

While there is an instinctive hesitancy in giving full acquiescence to such a position, and it may be that, logically, there is no such distinction to be drawn, and that actually urban and rural property blend into the same physical conditions, and that there exists an indefinite zone which partakes the nature of both properties, still the distinction has become *stare decisis* in this jurisdiction and it is too late at this time to inject confusion into a myriad of titles, and the court must adhere to the view that covenants of "seizin and warranty and against encumbrances" on city property cover rights-of-way both public and private, but that public rights-of-way are impliedly exempt from such covenants on rural property. As a matter of fact, the exemption of public rights-of-way on rural property

19—128 WASH.

is an exception to the general rule applicable to cove-
nants and deeds and is in the nature of a judicial fiction
at best, and we will not extend the exception beyond
that laid down in the *Hoyt, McDonald* and *Walquist*
cases, *supra.*

Therefore the respondent had a cause of action, and
the court was correct in overruling the demurrer to
the complaint and refusing to dismiss the action, and
the judgment is affirmed.

MAIN, C. J., HOLCOMB, MITCHELL, BRIDGES, FULLER-
TON, TOLMAN, and PARKER, JJ., concur.